OPINION OF THE COURT
John S. Thorp, Jr., J.
Petitioner, a candidate for the office of Justice of the Supreme Court, Queens County, Eleventh Judicial District, has moved by order to show cause, for an order, pursuant to sections 16-100 and 16-104 of the Election Law, directing that the names of candidates for Supreme Court, Queens County, Eleventh Judicial District be placed on the ballot directly beneath the names of candidates for the United States Senate and above the names of candidates for the New York City Council in the general election to be held on November 4, 1980.
Respondent, Board of Elections of the City of New York, has cross-moved for an order dismissing the petition.
*85 Respondents, Robert T. Groh and Benjamin Glass, who are candidates for the office of Justice of the Supreme Court, Queens County, Eleventh Judicial District and Steven S. Orlow and William H. Caulfield, who are candidates for the office of council member-at-large, Queens Council-manic District, have appeared in the proceeding and have opposed the petition. The three remaining respondent candidates have not appeared in the proceeding.
Petitioner’s application relates only to the ballot to be used in Queens County and seeks to have the names of the candidates for the office of Justice of the Supreme Court placed on lines 8 and 9 of the ballot rather than on lines 9 and 10 as directed by the Board of Elections and as shown in petitioner’s Exhibit No. 1. Were petitioner’s application to be granted, the candidates for the office of council member-at-large would be placed on line 10 of the ballot rather than on line 8 as directed by the Board of Elections.
The order in which the names of candidates for public office will appear on the ballot in a general election is governed by section 7-108 of the Election Law which provides as follows: “1. Upon ballots for a general election, the offices shall be listed in the customary order.”
Pursuant to that provision of law it would appear that at a meeting of the Board of Elections held on September 23, 1980 the order of the ballot was discussed and, insofar as it relates to Queens County, was agreed upon (board Exhibit E). That agreement of the Board of Elections provides that in Queens County the candidates for the office of council member-at-large (councilman-at-large) will appear on the ballot before the candidates for Supreme Court (board Exhibit D). The ballot has been so prepared.
The petitioner contends that the action of the Board of Elections was arbitrary, capricious, unreasonable and without foundation in law or in fact. It is her position that, since the office of Supreme Court Justice is created under the New York State Constitution and entails responsibilities, functions and jurisdiction enforceable throughout the State, candidates for that office should have a higher ballot position than candidates for the office of member of New York City Council which, she asserts, is created by *86 local statute and carries responsibilities limited to Queens County and, in a participating capacity, to the City of New York. She further alleges that voter interest and participation in the election of candidates significantly decreases for-offices at the lower end of the ballot and asserts that she has been prejudiced by the action of the Board of Elections in placing the candidates for council member-at-large one position higher on the ballot than Supreme Court candidates.
While there may very well be logic to the petitioner’s argument, there is no support therefor in the Election Law. As noted above the governing statute is subdivision 1 of section 7-108 of the Election Law.
The issue thus raised is whether the offices have been listed upon the ballot by the Board of Elections in the customary order.
There appears to be no reported decision interpreting the statute and the evidence of customary ballot order presented on the argument of the motion as to the precise offices in question was inconclusive.
There was no evidence presented of any customary ballot order for Queens County.
Three exhibits in the form of copies of ballots used in previous elections where the offices of Justice of the Supreme Court and council member-at-large were voted upon were received in evidence. In two instances, New York County 1969 ballot (board Exhibit A) and Kings County 1973 ballot (board Exhibit B), council member-at-large was listed on the ballot immediately above Justice of the Supreme Court. In the third, and most recent instance, New York County 1977 ballot (board Exhibit C), council member-at-large was listed on the ballot below Justice of Supreme Court.
From the evidence presented there does not appear, therefore, to be any customary order in which the two offices of Justice of the Supreme Court and council member-at-large have been listed on the ballot in the past.
The phrase “customary order” refers, of course, to the entire ballot. Traditionally, and as is evidenced by Exhibits A, B, C and D, offices have generally been listed on the *87 ballot in descending order of the geographic size of the area of candidacy (e.g., State-wide, city-wide, county-wide, congressional district, State senate district, assembly district).
In the instant case, both the office of Justice of the Supreme Court and the office of council member-at-large encompass the same geographic area, i.e., Queens County. Consequently, lacking any clearly established customary order in which the offices of Justice of the Supreme Court and council member-at-large had been listed on the ballot in the past, the Board of Elections had to make a decision as to which office should be listed above the other. Obviously, either choice it made could be characterized as arbitrary. However, the court finds that it is neither capricious nor unreasonable and has a foundation both in law and in fact.
Accordingly, the court holds that the respondent Board of Elections has complied with the provisions of section 7-108 of the Election Law and has listed the offices of Justice of the Supreme Court and council member-at-large in conformity therewith.
In light of the foregoing determination it is unnecessary to weigh the prejudice which would inure to the various respondents if the relief sought by the petitioner were to be granted. It should, however, be noted that the Board of Elections has mailed out the absentee and military ballots; has printed the general election ballots; and has partially set the voting machines. A change in the order of the ballot at this late date would entail substantial public expense as well as expense and inconvenience to candidates who have prepared campaign materials in reliance upon the determination of the Board of Elections.
Therefore, the motion of the respondent Board of Elections is granted and the application of the petitioner is denied and the petition is dismissed.